John A. Masterson #5-2386
Hampton O'Neill #5-2876
Alaina M. Stedillie #6-4326
WELBORN SULLIVAN MECK & TOOLEY, P.C.
159 N. Wolcott, #220
Casper, WY 82601
307-234-6907
jmasterson@wsmtlaw.com
honeill@wsmtlaw.com
asteillie@wsmtlaw.com

Michael J. McCue (*admitted pro hac vice*)
Meng Zhong (*admitted pro hac vice*)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169-5996
702-949-8200
MMcCue@lrrc.com
MZhong@lrrc.com

*Attorneys for Defendant Visa U.S.A. Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BLACK CARD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15 CV 27-S |
| | ) | |
| VISA U.S.A., INC., | ) | |
| JOHN DOE CORPORATIONS I-X and | ) | |
| JOHN DOES I-X, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT VISA U.S.A. INC.'S REPLY
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Visa U.S.A. Inc. ("Visa") respectfully submits this reply in support of its Motion for Summary Judgment.  Visa requested leave to submit this reply to address certain limited issues raised in the response filed by Plaintiff Black Card, LLC ("Black Card").   The Court granted Visa's request.  (Doc. # 182.)

Plaintiff Black Card, LLC's opposition tries to confuse the Court into believing that there are genuine issues of material fact when there are not and tries to avoid summary judgment by

claiming – a few weeks before the close of discovery – that there is uncompleted discovery relevant to the issues before the Court when there is not.  Black Card also resorts to asserting a new theory for its promissory estoppel claim and stating "facts" in support of its implied contract claim that are not supported by the evidence cited.  As set forth below, none of Black Card's arguments should defeat summary judgment in this case.[1]

## I.      BLACK CARD HAS FAILED TO IDENTIFY ANY GENUINE ISSUES OF FACT OR ANY ADDITIONAL DISCOVERY NEEDED FOR SUMMARY JUDGMENT

In Visa's Motion for Summary Judgment, Visa provided a statement of material facts underlying Black Card's claims and demonstrated that there is no genuine issue regarding any of these facts.  (MSJ at 3-11.)  Indeed, *nearly all of the material facts that Visa relies on are based on Black Card's own admissions, the testimony of Black Card's own witnesses, and Black Card's own documents*.  Yet, in the opening paragraph of its opposition, Black Card claims that the facts are "fiercely disputed."  However, Black Card fails to identify *any* dispute (genuine or not) regarding *any* of the *material* facts that Visa relied on in support of its Motion for Summary Judgment.  Indeed, Black Card virtually ignores Visa's statement of facts.

Moreover, Black Card tries to avoid summary judgment by claiming that discovery is incomplete without making any effort to comply with Rule 56(d).  Under Rule 56(d), "[w]hen facts are unavailable to the nonmovant" a party responding to summary judgment may submit an affidavit or declaration that shows "for specified reasons, [that] it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  However, "[a] party may not invoke Rule [56(d)] by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion."  *Johnson v. King*, Case No. 10–CV–279–S, 2011 WL 4963902, at *15 (D. Wyo. Oct. 17, 2011) (Skavdahl, J.).

---

[1]     Notably, Black Card did not respond to Visa's Motion for Summary Judgment on Black Card's tortious interference claims (Counts VI and VII) and, therefore, the Court should grant summary judgment in favor of Visa on these claims.  L. R. 7.1(b)(2)(A) (court may consider failure to file a response as a "confession of the motion").

Here, with a few weeks left in discovery, after taking depositions of nine (9) Visa witnesses, including Visa executives, and receiving tens of thousands of documents, Black Card submits an affidavit claiming it requires time to conduct discovery.  Specifically, Black Card contends that it needs documents "concerning Visa's finances and payments to Black Card, and documentation from third party industry competitors concerning Visa's behavior and intentions" in order to respond to Visa's Motion for Summary Judgment on Black Card's claims for breach of contract and of the covenant of good faith and fair dealing.  (Affidavit of Jason Neville at ¶ 6.) But Black Card never provides "specific reasons" why this discovery is "essential to justify its opposition."  A party "must state with specificity how the additional material will rebut the summary judgment motion." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) (internal quotations omitted).

None of the documents Black Card claims it needs are relevant to Visa's Motion for Summary Judgment on Black Card's breach of contract and covenant of good faith and fair dealing claims.  Visa's arguments on these claims are based on a narrow premise – *there was no contract in existence at the time when Black Card claims that Visa breached the contract*. Indeed, the Promotional Agreement expired at the end of 2013 and Black Card failed to identify any alleged breach committed before expiration – a fact that Scott Blum, Black Card's CEO and Rule 30(b)(6) witness, repeatedly admitted.  (*See* Ex. 3 to MSJ at 135, 139.)[2]  Accordingly, Visa's argument is based on undisputed facts and clear legal principles: the Promotional Agreement expired under its terms at the end of 2013, Visa told Black Card in writing that the contract expired, Black Card admitted that Visa and Black Card never agreed on terms of a new

---

[2]   In its response, Black Card claims for the first time that Visa breached the Promotional Agreement before it expired in December 2013 by withholding approval of one piece of marketing. (Resp. at 13.)   However, any materials not approved within 10 days were deemed approved – there cannot be a breach through simply waiting more than 10 days.  (MSJ Statement of Facts ¶ 13.)  In addition, the particular marketing piece was for January 2014, after the contract expired.  (Sec. Am. Compl. ¶ 34.)  Black Card also claims Visa's statements that it was working on a contract renewal in November and December 2013 constitute a breach. (Resp. at 19.) However, statements regarding contract renewal go to the formation of an agreement and the "implied covenant does not deal with the formation of a contract." *Four Nines Gold, Inc. v. 71 Const., Inc.*, 809 P.2d 236, 239 (Wyo. 1991).

agreement, and the implied covenant of good faith and fair dealing does not exist with respect to non-existent contracts. (*See* MSJ, Statement of Facts ¶¶ 23, 28.)

Accordingly, the Court should enter summary judgment in favor of Visa on Black Card's claims for breach of contract and breach of the covenant of good faith and fair dealing (Counts I and II).

## II. BLACK CARD HAS NOT CITED ANY EVIDENCE TO SHOW THAT THE PARTIES AGREED THEY WOULD OPERATE UNDER THE PROMOTIONAL AGREEMENT AFTER IT ENDED

In its response, Black Card argues Visa and Black Card agreed to operate under the Promotional Agreement after it expired in December 2013 under a theory of an "implied contract." (Resp. at 15.) But Black Card admits that the Promotional Agreement ended in December 2013 by its express terms. (Ex. 7 to MSJ, RFA No. 140; *see also* Sec. Am. Compl. ¶ 30.) And it is undisputed that Visa expressly told Black Card in early 2014 that Visa made its "final" payment under the Promotional Agreement and that the contract had "expired." (Ex. 27 to MSJ.) There is no evidence that Black Card took a contrary position until filing this lawsuit in 2015 or inquired about why Visa incentive payments had stopped. Indeed, as Visa's Motion for Summary Judgment demonstrates, Visa and Black Card were engaged in negotiations of a new agreement during 2014 and never agreed on terms – facts that Black Card does not dispute. (*See* MSJ at 8-9.) Thus, the parties' express statements and conduct are directly contrary to the existence of an implied contract.

In its response, however, Black Card asks the Court to imply a contract that is contradicted by the parties' express statements (Resp. at 15), which is contrary to Wyoming law. *See Andrews v. S.W. Wyo. Rehab. Ctr.*, 974 P.2d 948, 951 (Wyo. 1999) (refusing to find an implied contract that an employee is not an at will employee in the face of "conspicuous and unambiguous disclaimer" to the contrary); *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 649 (Wyo. 2003)("In determining whether an implied contract was formed, we look . . . to the

outward manifestations of a party's assent sufficient to create reasonable reliance by the other party.") (internal quotations and citations omitted).

While ignoring Wyoming cases, Black Card relies on *Gafnea v. Pasquale Food Co.*, 454 So. 2d 1366, 1367–68 (Ala. 1984), for the general proposition that a contract can be implied from performance after expiration.  However, as Alabama courts held in subsequent opinions, "[d]espite the general rule regarding performance of a contract after expiration, 'where mutual agreement is ***contradicted by the statements of either party at the time*** . . . there can be no implication of contractual under-taking by that party.'" *E. Alabama Water, Sewer & Fire Prot. Dist. v. Westpoint Home, Inc.*, Case No. 3:09cv541–MHT, 2010 WL 2491427, at *5 (M.D. Ala. June 21, 2010) (emphasis added).  Here, as noted above, there is uncontradicted evidence showing Visa told Black Card the contract expired.  (*See* Ex. 27 to MSJ.)  Moreover, Black Card has admitted that the agreement "expired" according to its terms and that subsequently Visa stopped making incentive payments to Black Card.  (*See* Black Card's Statement of Facts, Resp. ¶ 27 ("Visa admits that it made no incentive payments to Black Card . . . after the lapse of the written Promotional Agreement."); Ex. 1 to Resp. at p. 135 ("Q. When did it expire? A. [by Black Card's 30(b)(6) witness] I think it expired on a year end and it might have been 2013."); Ex. 4 to Resp. at p. 44 ("A. [by Visa's 30(b)(6) witness] Our promotional agreement expired. We informed Black Card in writing that the promotional agreement had expired, and we had made final payment to Black Card."); Ex. 28 to Resp. at p. 1 (Visa to Black Card: "I'd like to discuss the renewal of our program agreement which expires on December 31, 2013.")).

The evidence Black Card cites does not support an implied agreement to operate under the terms of the Promotional Agreement.  The chart on the following page shows all of the facts cited by Black Card at page 15 of its response (including footnote 13) and Visa's response:

| Black Card's "Facts"<br>From Paragraph 20 of its Response | Visa's Response |
|---|---|
| SOF ¶ 20 states that Visa "informed Black Card it **anticipated** getting a formal executed renewal to Black Card before the end of the year, explaining that **if** a written promotional agreement was signed before March 31, 2014, there would be no interruptions in payments to Black Card." (emphasis added). | The fact that Visa "**anticipated**" sending a proposal and indicated that there would be no interruption in payment "**if**" the parties sign an agreement does not create an enforceable agreement between Visa and Black Card.   "[W]e do not endeavor to enforce 'agreements to agree.'" *Parkhurst v. Boykin,* 94 P.3d 450, 459 (Wyo. 2004); *see also Doud v. First Interstate Bank of Gillette*, 769 P.2d 927, 929 (Wyo. 1989) (affirming summary judgment finding that there was no contract in case where plaintiff claimed he expected a bank to send him a loan proposal after telling him that a loan was "not a problem").<br><br>Furthermore, there is no evidence as to what terms Visa would have proposed or whether Black Card would have agreed to the terms. In fact, as Mr. Blum, Black Card's CEO admits, Visa never sent him a proposal and even if Visa had sent him a proposal on the exact same terms as before, he does not know whether he would have signed it.  (Ex. 4 to MSJ, Blum Tr. at 218.)  The courts "cannot supply the terms of the agreement for the parties." *Doud*, 769 P.2d at 929. |
| Exhibit 14 (cited at SOF ¶ 20) | Exhibit 14 is a list of Black Card's advertising.   It contains nothing related to renewal of the Promotional Agreement. |
| Exhibit 28 (cited at SOF ¶ 20) is a September 11, 2013 email from Visa to Black Card that states: "I'd like to discuss the renewal of our program agreement which **expires on December 31, 2013**." (emphasis added) | This email confirms Visa's position that the Promotional Agreement expired according to its explicit terms and did not extend beyond its term, but Visa was willing to "discuss" renewal. |
| Exhibit 29 (cited at SOF ¶ 20) is an email chain that includes statements from Visa to Black Card that "our proposal for the Black Card program is **pending** senior management approval."  "I anticipate having a formal proposal for you **in two weeks** on December 16" and "…**[i]f we can target signing a new contract** by March 31, 2014, we will not have any interruption in payment to Black Card." (emphasis added). | The fact that Visa is discussing "if" the parties can sign a new contract, or providing a proposal "in two weeks" or that its proposal is "pending" approval by others indicates there is no agreement and shows the parties were preparing to engage in preliminary negotiations.   "The evidence unequivocally demonstrates that the parties contemplated further discussions and negotiations leading to a signed document . . . ."  *Inter-Mountain Threading, Inc. v. Baker Hughes Tubular Servs., Inc.,* 812 P.2d 555, 559 (Wyo. 1991).   (refusing to enforce preliminary negotiations). |

| Black Card's "Facts"<br>From Paragraph 20 of its Response | Visa's Response |
|---|---|
| Exhibit 30 (Cited at SOF ¶ 20) contains an email on November 22, 2013 where Visa tells Barclays that it will "kick-off the internal process" for renewal. | The fact that Visa informed Barclays that it was beginning the internal process for renewal again does not support the existence of an implied contract. |
| Exhibit 31 (Cited at SOF ¶ 20) is an internal Visa email in January 2014 where Visa employees state that "We're not in a position yet to approach Black Card." | This document contradicts the existence of an implied agreement, because it shows Visa was not in a position to approach Black Card with an offer. |
| Exhibit 32 (SOF ¶ 20) is an internal Visa email in February 2014 where Visa's head of North America tells Visa's president that "we have a major problem with Black card and how it is being marketed." | There is no mention of the Promotional Agreement or renewal. |
| Footnote 13 contains a claim by Black Card that Visa disapproved certain Yahoo advertisements in 2014 "based upon the terms of the Promotional Agreement." | The string of "evidence" that Black Card cites does not support this statement and does not even mention a Yahoo advertisement.  In fact, upon review, *none* of the exhibits or affidavits Black Card has attached to the Response discusses a Yahoo advertisement.  Visa notes that it did deny Yahoo advertisements that Black Card wanted to use in August 2014 (*see* Exhibit 34E to MSJ), but all Visa said was that the "Yahoo ads are not approved."  At no point does Visa claim the denial was based on the terms of any agreement.  Indeed, as Visa explained in its Motion for Summary Judgment, it had the inherent right to control use of its VISA mark by others regardless of the existence or absence of a contract. |

Thus, based on the undisputed facts and as a matter of law, there was no implied contract between the parties.  Therefore, the Court should enter summary judgment in favor of Visa on Black Card's implied contract claim (Count III).

## III.   BLACK CARD CANNOT USE PROMISSORY ESTOPPEL TO ENFORCE A VAGUE AND INDEFINITE STATEMENT

Black Card's promissory estoppel claim (Count V) was originally based on Black Card's contention that Visa promised to enter into a new contract with Black Card.  (*See* Sec. Am. Compl. ¶ 106).  Visa explained in its Motion for Summary Judgment why this claim fails based on the undisputed facts.  (MSJ at 19-20.)  Now, in its response, Black Card has identified a new basis for its promissory estoppel claim – that "Visa made an explicit statement that it would

allow Black Card to continue its marketing efforts 'business as usual' in 2014." (Resp. at 22.)
Black Card's new theory cannot withstand summary judgment either.

Black Card's new theory is supported by a single email which reads:

*Hi Scott:*

*Please proceed in marketing "business as usual" until we have the opportunity to discuss. Continue to run materials past Barclays for their review and approval.*

*Thank you.*
*Steve [O'Reilly from Visa]*

(Black Card 4113, Ex. 44 to Resp.) (italics added).

Wyoming law holds that promissory estoppel requires a "clear and definite promise." *Powell v. Busboom,* 44 P.3d 63, 66 (Wyo. 2002). The O'Reilly email was not a "clear and definite" promise to continue marketing efforts indefinitely, let alone a commitment to a whole new contract. The email simply says to *proceed* with *marketing* as usual *until* the parties have the opportunity to discuss. Visa was not promising anything. The statement does not memorialize a promise to agree, but rather affirmatively contemplates discussions in the future. Such statements are not enforceable. Even if the O'Reilly email could be construed as a promise, it is a promise so indefinite that it cannot be enforced as a matter of law. *See Birt*, 75 P.3d at 653 ("Reliance on an indefinite promise is unreasonable for the same reason that courts cannot enforce such a promise—the terms remain to be determined."); *Rialto Theatre v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 334 (Wyo.1986) (holding that even "an agreement to agree in the future" is not enforceable).

Wyoming law is clear that "mere expressions of hope and opinion in an obviously preliminary negotiation context . . . [are] mere expressions of opinion and agreements to agree" and are not enforceable under promissory estoppel. *Inter-Mountain Threading,* 812 P.2d at 559. Thus, statements like "This was as good as sold," "the deal would be final," "You don't have any . . . problems as long as I own the bank," "not any problem", or "we can do a deal" are not the types of statements courts enforce under promissory estoppel. *Id.* (collecting cases). *Ames v. Sundance State Bank*, 850 P.2d 607 (Wyo. 1993), is particularly instructive. In *Ames*, a bank

loaned money to a business under a note that was renewed year after year until one year, the bank declined to renew the note. *Id.* at 608. The business sued the bank for promissory estoppel claiming the bank must renew the note because a bank employee said the bank would "fund his operation" for the next year. *Id.* The trial judge entered judgment notwithstanding the verdict in favor of the bank:

> [E]ven if the loan officer made statements that the bank would "fund his operation" for the 1989 year such a statement does not meet the requirement of an unambiguous promise . . . It was made in the context of ongoing negotiations, and it specified none of the essential terms of the transaction. It was thus not an unambiguous promise, as is necessary to stat[e] a claim for promissory estoppel.

*Id.* at 610 (approvingly quoting the district court's opinion).

Black Card has previously admitted that the O'Reilly email is ambiguous. Scott Blum, Black Card's CEO and 30(b)(6) witness, testified that he has no idea what Mr. O'Reilly meant by the email and Mr. Blum never asked. (BC Tr. at 369, Ex. 1 to Resp.) Mr. Blum claimed he believes it meant "we're gonna continue on as we are" but he does not know for how long – speculating that it could be anywhere from five years to potentially "forever." (*Id.* at 369-370.) Black Card also does not know whether the statement meant Visa would pay Black Card any money or how much (*id.* at 372 ("I don't know what they were gonna do.")) or what Visa meant by "until we have the opportunity to discuss" (*id.* at 376 ("I don't know what he wanted to discuss.")).

Taken to its logical conclusion, Black Card is asking the Court to enforce an alleged vague and indefinite "promise" that might last "forever" on unknown terms until Visa can discuss some unknown topic with Black Card. "It is not unambiguous, nor is it even reasonable." *Ames*, 850 P.2d at 610 (rejecting statement that might bind bank to loan money forever as not enforceable under a theory of promissory estoppel). The Court cannot enforce such a vague and undefined statement, because it would require the Court to supply missing terms like time and define the parties' obligations. *Birt*, 75 P.3d at 653 ("The court may not supply the missing terms to create an agreement.").

Therefore, as a matter of law, Black Card's new theory of promissory estoppel fails and the Court should grant summary judgment in favor of Visa on Black Card's promissory estoppel claim (Count V).

## CONCLUSION

For the foregoing reasons, the Court should grant Visa's motion for summary judgment against Black Card.

Dated: January 11, 2017

By: _/s/ Hampton K. O'Neill_

John A. Masterson #5-2386
Hampton O'Neill #5-2876
WELBORN SULLIVAN MECK & TOOLEY, P.C.
159 N. Wolcott, #220
Casper, WY 82601
307-234-6907
jmasterson@wsmtlaw.com
honeill@wsmtlaw.com

Michael J. McCue (*admitted pro hac vice*)
Meng Zhong (*admitted pro hac vice*)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169-5996
702-949-8200
MMcCue@lrrc.com
MZhong@lrrc.com

*Attorneys for Defendant Visa U.S.A. Inc.*

## Certificate of Service

I hereby certify that on the 11th day of January, 2017, a true and correct copy of the above and foregoing document was served via the Court's CM/ECF system on the following counsel of record for Black Card, LLC:  Jason A. Neville, jneville@wpdn.net; Erica R. Day, eday@wpdn.net;  Billie L.M. Addleman, baddleman@hirstapplegate.com;  and Laurene S. Rogers, lrogers@hirstapplegate.com.

By: _/s/ Hampton K. O'Neill_